IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**GLORIA ORTIZ-MARTINEZ**,

    Plaintiff,

    v.

**FRESENIUS HEALTH PARTNERS, PR, LLC**, *et al.*,

    Defendants.

Civil No. 14-1335 (BJM)

**OPINION AND ORDER**

    Gloria Ortiz-Martinez ("Ortiz") brought this disability discrimination action against Fresenius Health Partners, PR, LLC ("Fresenius") and Fresenius Medical Care Extracorporeal Alliance of Puerto Rico, Inc.,[1] alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Americans with Disabilities Amendments Act of 2008 ("ADAA"); the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et seq.*; and Puerto Rico Law 44, P.R. Laws Ann. tit. 1, § 504. Docket No. 1. Ortiz and Fresenius have cross-moved for summary judgment. Docket Nos. 27, 34, 41. Fresenius also moved to strike Ortiz's statement of uncontested material facts, Docket Nos. 36, 48, and Ortiz opposed, Docket No. 38. The parties consented to proceed before a magistrate judge. Docket No. 15.

    For the following reasons, Fresenius's summary judgment motion is **GRANTED**, and Ortiz's motion is **DENIED**.

**SUMMARY JUDGMENT STANDARD**

    Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in

---

[1] The parties agree the proper defendant is Bio-Medical Applications of Arecibo, Inc., which is referred to by the parties as "Fresenius." Docket No. 33 at 1; Docket No. 38 at 5.

favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation," *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[2] submissions.[3]

---

[2] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record that the movant contends are uncontested and

Fresenius is a healthcare provider that administers dialysis treatment to patients with, among other things, kidney disease. FSUMF ¶ 1. Ortiz began working as a social worker at Fresenius in 2010. FSUMF ¶ 3. When she first started, Ortiz received a job description for the position. FSUMF ¶ 5. Among other things, her duties include preparing substantial handwritten and electronic documentation of the services rendered to patients, including a monthly report for each patient. FSUMF ¶¶ 6–8.

On July 24, 2012, Ortiz suffered a work-related accident while preparing handwritten notes in patient files. FSUMF ¶ 14. Suffering from unbearable pain in her left shoulder, forearm, and hand—the hand she uses to write—Ortiz sought emergency services at a hospital. FSUMF ¶ 12. After she was discharged, Ortiz requested that Fresenius complete a State Insurance Fund ("SIF") form so that she could receive workers' compensation benefits. FSUMF ¶ 13. About a week later, Ortiz attended an SIF-required medical examination and was asked not to return to work. FSUMF ¶¶ 15–16. Over the course of approximately one year, Ortiz attended around 40 additional medical examinations, and each time was ordered to continue resting and not return to work. FSUMF ¶ 17.

On July 12, 2013, she was examined by a doctor and again ordered to rest until July 22, 2013. FSUMF ¶ 18. Notwithstanding that order, Ortiz returned to the SIF on July 17, 2013, requesting that the doctor conduct another examination with an eye toward determining whether she could return to work while undergoing continuing treatment.

---

material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). Litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007). Ortiz's statement of uncontested material facts ("OSUMF') failed to comply with Local Rule 56(e) because the statements therein have no record citations. For this reason, the OSUMF is stricken from the record and will not be considered. *See, e.g.*, *Toledo-Colon v. Puerto Rico*, 941 F. Supp. 2d 234, 240 (D.P.R. 2013) (statement of uncontested material facts disregarded where it lacked proper record citations).

[3] OSUMF, Docket No. 27-1, and Fresenius's statement of uncontested material facts ("FSUMF"), Docket Nos. 33, 48.

FSUMF ¶¶ 18–21. The SIF doctor allowed her to do so, and Ortiz received a form stating the same. FSUMF ¶¶ 23–24.

On July 18, 2013, Ortiz returned to Fresenius and submitted the SIF form to Priscilla Ortiz ("Priscilla"). FSUMF ¶ 24. Priscilla inquired about her medical restrictions while undergoing continuing treatment, and asked her to specify the accommodations she needed. FSUMF ¶ 25. Without this information, Priscilla told Ortiz that Fresenius could not reinstate her. FSUMF ¶ 26. Seeking to satisfy Priscilla's request, Ortiz went to the SIF that same day and got a letter. FSUMF ¶ 27. That letter indicated that Ortiz had difficulty doing repetitive tasks; that she had difficulty grabbing, pulling, and squeezing; and that she exhibited problems that restricted the movement of her left hand, as well as the strength of that hand. FSUMF ¶ 29; Docket No. 42-5. In light of this, the letter stated that Ortiz was a candidate to have surgery on her hand, asked Fresenius to make the "necessary adjustments," and stated that there "could be" additional recommendations. FSUMF ¶ 30; Docket No. 42-5.

Ortiz returned to Fresenius that same day and submitted the SIF letter to Priscilla, who read the letter and said it "didn't tell her anything." Ortiz Dep. 76:18–23, Docket No. 42-1. Nonetheless, Priscilla told her the letter would be analyzed and that she would be contacted the following week. *Id.* at 77:1–16. At that time, Ortiz told Priscilla that she did not want Fresenius to terminate her because of a belief that she intended to abandon her job. *Id.* at 82:8–25. Priscilla assured her that she was not going to lose her job. *Id.*

Having received no response from Fresenius, and without first contacting Fresenius to get one, Ortiz filed an EEOC complaint on July 26, 2013. *Id.* at 85–86. Four days later, she also filed a complaint with the Anti-Discrimination Unit of the Puerto Rico Department of Labor ("ADU"). *Id.* at 109:21–24. And sometime around August 2, 2013, she discussed the matter with her union delegate, Marcos Soto ("Soto"). *Id.* Meanwhile, however, Fresenius had made multiple attempts to contact Ortiz. FSUMF ¶35. Indeed, from July 18, 2013 to August 6, 2013, Fresenius's representative, Awilda Rodriguez

("Rodriguez"), attempted to contact Ortiz on approximately ten occasions via the telephone number she provided in her employment application. FSUMF ¶ 35; Docket No. 33-8 at 12–14. Fresenius also sent her a letter on July 26, 2013, which noted Fresenius's unsuccessful attempts to contact her via telephone—the first of which occurred on July 23, 2013. FSUMF ¶ 44; Docket No. 42-6. Ortiz, on the other hand, admitted that she made no attempt to contact Fresenius before August 6, 2013. FSUMF ¶ 42. This was so even though Soto informed her sometime around August 2, 2013, about Fresenius's unsuccessful attempts to contact her. FSUMF ¶¶ 47–48.

On August 6, 2013, Ortiz and Soto met with Priscilla and Rodriguez. FSUMF ¶ 49. At that meeting, Ortiz was told that Fresenius would be willing to reinstate her if her medical restrictions could be clarified. FSUMF ¶ 50. Soto recommended that Fresenius contact the SIF to obtain the additional information, and Fresenius did so the next day. FSUMF ¶ 51; Docket No. 33-11 at 2. Ortiz amended her ADU complaint after this meeting, and later filed a union grievance. FSUMF ¶¶ 53–54.

Having received no response from the SIF, Fresenius sent Ortiz a letter on September 6, 2013. FSUMF ¶ 55; Docket No. 42-8. The letter noted that Fresenius unsuccessfully attempted to contact the SIF, and that it needed the following information to engage in the interactive process: the maximum weight she could lift; the frequency of the rest periods she required; the types of repetitive movements she needed to avoid; the types of limitations for grabbing, squeezing, and pulling that she had; and the ability to use her left hand to perform the essential duties of her job as a social worker. Docket No. 42-8. Ortiz never responded to that letter. FSUMF ¶ 56. And although she never received a termination letter, she secured another job and sued Fresenius, alleging it failed to provide her a reasonable accommodation by stonewalling her during the interactive process. FSUMF ¶¶ 60–61.

# DISCUSSION

Fresenius contends it is entitled to summary judgment because Ortiz has not established that she is a disabled individual under the ADA, and because Ortiz was primarily responsible for the breakdown in the interactive process. Suggesting Fresenius was required to reinstate her on July 18, 2013—the date the SIF permitted her to return to work while undergoing continuing treatment—Ortiz contends she is entitled to summary judgment because Fresenius refused to do so.

## I. Failure to Accommodate

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the statute, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such entity." *Id.* § 12112(b)(5)(A); *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001) ("the plaintiff fully bears [the burden of showing reasonable accommodation], and the defendant fully bears the [burden of showing undue hardship]").

To assert a failure to provide a reasonable accommodation claim under the ADA and the Rehabilitation Act, a plaintiff must establish that: (1) she suffered from a "disability" within the meaning of the statute; (2) she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability. *Calero-Cerezo*, 355 F.3d at 19–20 ("the case law construing the ADA generally pertains equally to claims

under the Rehabilitation Act"). Fresenius contends Ortiz is not entitled to protection under the ADA because she has failed to explain why she qualifies as a disabled individual. Both parties then skip the second element of a reasonable accommodation claim and home in on the parties' behavior during the interactive process, which is sometimes a component of the third element of a reasonable accommodation claim. *See EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014) (*Kohl's*).

## II.     Disabled Individual

Fresenius contends Ortiz has failed to establish that she is disabled within the meaning of the ADA. To determine whether an impairment qualifies as a disability under the ADA, a three-part analysis is applied: the plaintiff must establish that (1) she suffers from a physical or mental impairment; (2) that the impairment affects life activities that are "major," i.e., "of central importance to daily life";[4] and (3) that the impairment "substantially limits" the identified major life activity. *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011) (internal citations omitted). Because of this multi-pronged analysis, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability." *Id.*

Ortiz failed to address Fresenius's contention, mischaracterizing its argument as disputing whether Ortiz was qualified to perform the essential functions of the job with a reasonable accommodation. *Compare* Def.'s Mot. Summ. J. at 12, *with* Pl.'s Opp'n at 5. To be sure, Ortiz does point to evidence of the medical diagnoses of her bilateral carpal tunnel syndrome and sprained shoulder, arm, and hand. Pl.'s Opp'n at 5. But that evidence, without more, is insufficient to establish that she is a disabled individual within the meaning of the ADA. *See, e.g.*, *Ramos-Echevarria*, 659 F.3d at 187. Thus, summary judgment for Fresenius is granted. *See, e.g.*, *Lang v. Wal-Mart Stores E., L.P.*, No. 15-

---

[4] "Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty—'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Ramos-Echevarria*, 659 F.3d at 187 (quoting 29 C.F.R. § 1630.2(i)).

1543, 2016 WL 821038, at *5 (1st Cir. Mar. 2, 2016) ("to survive an adverse summary judgment on a failure-to-accommodate claim, a plaintiff must point to sufficient evidence showing that . . . she is disabled within the ADA's definition").

## III.   Interactive Process

Even if Ortiz had established that she is a qualified, disabled individual under the ADA,[5] Fresenius is entitled to summary judgment because the record evidence indicates she was primarily responsible for the breakdown in the interactive process. Under the third element of a failure-to-accommodate claim, "an employee's request for accommodation sometimes[6] creates 'a duty on the part of the employer to engage in an interactive process.'" *Kohl's*, 774 F.3d at 132 (quoting *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008)).[7] The interactive process requires bilateral, good-faith cooperation between the employer and employee, and "involves an informal dialogue" between the two in which both parties "discuss the issues affecting the employee and potential reasonable accommodations that might address those issues." *Kohl's*, 774 F.3d at 132 (citations omitted). For this reason, "[i]f an employer engages in an interactive process with the employee, in good faith, for the purpose of discussing alternative reasonable accommodations, but the employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for a failure to provide reasonable accommodations." *Id.*

---

[5] Because both parties skipped the second element of a reasonable accommodation claim, they apparently agree that—had the interactive process not broken down—Ortiz would have been qualified to perform the essential functions of the job with a reasonable accommodation. I note, however, that even if a reasonable accommodation was available, Ortiz does not state what that accommodation would have been.

[6] The First Circuit "does not regard an employer's participation in the interactive process as an absolute requirement under the ADA," opting instead to "resolve the issue on a case-by-case basis." *Kohl's*, 774 F.3d at 132 n.8 (quoting *Kvorjak v. Maine*, 259 F.3d 48, 52 (1st Cir. 2001)).

Reasonable accommodation cases "turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior," *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506, 515 (1st Cir. 1996), and *Kohl's* aptly illustrates how an employee's unreasonable failure to cooperate in the interactive process precludes employer liability. 774 F.3d at 132. In that case, Kohl's restructured its staffing system, which affected Manning's employment schedule. *Id.* at 129. Manning suffered from diabetes and the new schedule, which included unpredictable hours, affected her ability to manage her stress, glucose level, and insulin therapy. *Id.* Manning's doctor wrote a letter to Kohl's store manager, Tricia Carr ("Carr"), requesting that she be allowed to work a more predictable schedule. *Id.* Carr sent the letter to the human resources department, and was subsequently asked to meet with Manning to propose a schedule in which she would not work any night shift immediately followed by a day shift. *Id.* Carr and Manning's immediate supervisor met with Manning to do so. *Id.*

Manning was not pleased, requesting instead that she be permitted to work a "steady schedule." *Id.* After being told that her counterproposal was not an option, Manning became upset and left the meeting, telling Carr she had no choice but to quit. *Id.* Carr attempted to calm her down, followed her, and requested that she consider alternative accommodations. *Id.* at 131. Ten days later, Carr called Manning, asking again that she reconsider her decision to quit. *Id.* Manning never responded, and Kohl's terminated her one week after Carr's call. *Id.* Under these circumstances, the trial court granted summary judgment in the employer's favor, and the First Circuit affirmed. *Id.* at 133–34; *see also Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011) ("It is difficult to judge the reasonableness of accommodations when the employee withdraws before we can say with any authority what these accommodations would have been.").

As in *Kohl's*, Fresenius attempted to engage in the interactive process with Ortiz, but that process broke down when Ortiz unreasonably stonewalled her employer. 774

F.3d at 133–34. The record evidence indicates so because on July 18, 2013, Ortiz made Fresenius aware of her intent to return to work while undergoing continuing treatment. Entertaining Ortiz's request, Priscilla asked her to inform Fresenius of her medical restrictions and to specify the accommodations she would need to perform her essential job duties. Although Ortiz initially cooperated with the interactive process by obtaining the July 18 SIF letter, she refused to cooperate anymore thereafter. Indeed, she did not respond to Fresenius's multiple attempts to contact her via phone and mail from July 23 to August 6, 2013.

And because Soto, her union representative, informed her of Fresenius's failed efforts to reach her, Ortiz was aware of those unsuccessful attempts—at the very latest as of August 2, 2013. What is more, Fresenius informed Ortiz on August 6, 2013 that it was willing to reinstate her so long as she engaged in the interactive process. After this meeting, Fresenius attempted to get from the SIF the information it requested from Ortiz, though that effort was unsuccessful. Because it was unsuccessful, Fresenius sent a letter to Ortiz on September 6, 2013, detailing the specific information it wanted to know. For her part, Ortiz amended her ADU complaint, filed a union grievance, and ultimately did not respond to Fresenius's request. Because Ortiz refused to cooperate in the interactive process after July 18, 2013—despite Fresenius's multiple attempts to have her do so—Fresenius "cannot be held liable under the ADA for a failure to provide reasonable accommodations." *Kohl's*, 774 F.3d at 132. Thus, Fresenius is entitled to summary judgment on Ortiz's reasonable accommodation claim.

## IV.  Law 44 Claim

Fresenius contends it is also entitled to summary judgment on Ortiz's Puerto Rico Law 44 claim. P.R. Laws Ann. tit. 1, § 501 *et. seq.* Law 44 is "Puerto Rico's counterpart to the ADA," and "creates an obligation for any employer to provide reasonable accommodations." *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 175 (D.P.R. 2008). Because "the elements of proof for a claim under Law 44 are

essentially the same as those for establishing a claim under the ADA," and because summary judgment is appropriate as to Ortiz's ADA failure-to-accommodate claim, Fresenius is entitled to summary judgment on Ortiz's Puerto Rico Law 44 claim. *See Salgado–Candelario*, 614 F. Supp. 2d at 175.

## CONCLUSION

For the foregoing reasons, Fresenius's summary judgment motion is **GRANTED**, and Ortiz's summary judgment motion is **DENIED.** All claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 15th day of March 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge